IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRANDON CASTILLO | Case No. 2022-CR-14-2<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Defendant Brandon Castillo ("Castillo") seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing his medical conditions and access to health care. [158]. The Government filed a response in opposition to Castillo's motion, ([162]), and Castillo replied ([163]). Defendant Castillo also filed an emergency motion for inspection before the District Court. [164]. For the following reasons, Castillo's motion for compassionate release [158] and his motion for inspection [164] are denied.

**I. Background Facts**

On January 10, 2022, a grand jury returned an indictment charging Castillo with knowingly and intentionally delivering a controlled substance: 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance, and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. [1]. On October 3, 2023, Castillo pled guilty to the indictment, pursuant to a written plea agreement. [87]; [88].

1

After consideration of the parties' arguments, including Defendant's argument, principally regarding his medical conditions, on December 6, 2024, the Court sentenced Mr. Castillo to one year and one day. [149]. The Court ordered Castillo to report on January 7, 2025. *Id.* Castillo is serving his sentence at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield"). [158] at 2; [162] at 4. His projected release date is December 10, 2025. [158] at 1; [162] at 4.

Mr. Castillo moved for compassionate release or, in the alternative, a transfer to the Rochester, Minnesota Medical Center or home confinement. [158]. The Government opposed the motion. [162]. Mr. Castillo filed a reply in support of his motion. [163].

## II. LEGAL STANDARD

Pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), a court may reduce an inmate's term of imprisonment after he has exhausted all "administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Once the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment if the court finds, as relevant here, that (1) the reduction is consistent with the factors in 18 U.S.C. § 3553(a); and (2) "extraordinary and compelling" reasons warrant a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i). *See United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020) (affirming

district court's discretion to award compassionate release to prisoner who is "outside the scope of 18 U.S.C. § 3582(c)(1)(A)(ii)" based on "'extraordinary and compelling reasons'"). The defendant bears the burden to establish that he is eligible for a sentence reduction.

"A movant cannot rightly claim he is legally entitled to compassionate release because the background sentencing law has changed, but he may argue that he nonetheless deserves a sentence reduction based on that change and other relevant factors." *In re Thomas*, 91 F.4th 1240, 1242 (7th Cir. 2024); *cf. United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) ("At step one the [defendant] must identify an "extraordinary and compelling" reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to [a statute].").

### III. Analysis

#### a. Exhaustion

There is no dispute that Defendant Castillo has exhausted his administrative remedies as required by § 3582(c)(1)(A). [162] at 7; *see also* [158] at 2. On April 9, 2025, Castillo made an administrative request for compassionate release based on extraordinary circumstances to the Warden at MCFP Springfield. [158-1] at 1–2. That request was denied on April 30, 2025. [158] at 2; [162] at 7.

#### b. Extraordinary and Compelling Reasons

In determining what constitutes extraordinary and compelling reasons to modify a person's sentence, courts consider the guidance contained in the U.S.

3

Sentencing Guidelines Manual at U.S.S.G. § 1B1.13. On April 27, 2023, the U.S. Sentencing Commission submitted proposed amendments to § 1B1.3 to update its policy statement to cover prisoner-initiated motions for compassionate release and those amendments went into effect on November 1, 2023. The amended Guidelines define extraordinary and compelling reasons as existing under the following circumstances or a combination thereof: medical circumstances, age, family circumstances, victim of abuse, other reasons of similar gravity, and unusually long sentences. U.S.S.G. § 1B1.13(b)(1)–(6).

Castillo argues his early release is warranted for the following reasons: (1) MCFP Springfield's determination that he could not bring a defibrillator into prison; (2) lack of treatment for a heart condition; (3) inadequate time with dialysis; (4) the provision of his medication early in the morning without food; and (5) MCFP Springfield's decision not to issue him an elevator pass. *See* [158]. The Government contends Mr. Castillo's medical records contradict his arguments and disputes there is any basis for early release. *See* [162]. The Court finds that Mr. Castillo does not present any extraordinary or compelling circumstances that support ordering early release.

### i. Medical Conditions

A medical condition may be an extraordinary and compelling reason when the illness is terminal or when the defendant's ability to provide self-care within the environment of a correctional facility is substantially diminished and the defendant is not expected to recover. U.S.S.G. § 1B1.13(b)(1). "Compassionate release due to a

4

medical condition is an extraordinary and rare event." *United States v. Dusenbery*, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019), *aff'd* 2020 WL 7315919 (6th Cir. July 24, 2020) (quoting *United States v. Gray*, 2019 WL 4564735, at *3 (N.D. Ohio Sept. 20, 2019) (citation omitted)).

Mr. Castillo was diagnosed with end-stage renal disease approximately 13 years ago and suffers from non-compaction cardiomyopathy along with other medical conditions. [158] at 4. Before his incarceration, he received dialysis three days per week. *Id.* He has been awaiting heart and kidney transplants and had a heart defibrillator implanted in 2023. *Id.* Mr. Castillo claims he is receiving inadequate medical treatment at MCFP Springfield.

Despite this Court's recommendation that the Bureau of Prisons allow Castillo to bring his defibrillator monitoring device to the prison where he is serving his sentence, he was not permitted to bring the monitor. [152]; [158] at 5. The heart defibrillator Castillo previously had implanted monitors his irregular heartbeat and he states the monitor is necessary to report his condition to his physician. [158] at 5. Without the device, Castillo contends the defibrillator is not being monitored by any physician. *Id.* Moreover, Castillo contends he has not received any treatment for his heart condition during his incarceration because the medical staff maintain that he does not have a heart condition. *Id.*

Castillo's medical records undermine his statements regarding his heart condition and lack of a defibrillator monitoring device. The medical records show Castillo was examined by a cardiologist on approximately February 6, 2025 ([158-2]

5

at 589), February 11, 2025 ([158-1] at 5), March 3, 2025 (*id.* at 5), and April 2, 2025 (158-2] at 89). At the February 6, 2025 cardiac evaluation, cardiologist Doctor Myears recommended an echo—an imaging test used to examine the heart—and 48-hour Houlter monitor—a test recording a heart's electrical activity over a 48-hour period. [162-2] at 590. The purpose of these tests was to get a better understanding of any of Castillo's heart issues. *Id.* The records reflect that Castillo "adamantly refuse[d]" the cardiologist's recommendations for the tests, telling the cardiologist, "I will be out of here in a month anyway." *Id.* Defendant's records show additional cardiologist appointments scheduled for July (*id.* at 211) and August (*id.* at 90). These records also support that Castillo is housed at a medical facility where he has regular access to cardiologists in addition to other medical staff who can monitor Castillo's defibrillator to the extent Castillo allows them.

Castillo also asserts that he is not receiving adequate time with dialysis and thus his fluid levels are always high. [158] at 5. He states additional treatments are not available due to cost prohibitions, he has not had the opportunity to request additional treatment from a doctor, and that the individuals performing dialysis are incompetent because, at least in part, they cannot locate his veins. *Id.* Furthermore, Castillo asserts that an individual who he claims wanted to fight him works in the dialysis treatment center on the days Castillo receives treatment. *Id.* at 5–6. He contends he had to forego dialysis treatment to avoid interacting with this individual for his own safety. [163] at 3. Castillo claims these are all barriers to care. [158] at 5–6.

6

Again, Castillo's medical records do not support that he is receiving inadequate dialysis care. According to the records, Castillo has refused dialysis or partial dialysis on multiple occasions. *See, e.g.*, [162-2] at 199 (1/15/25: Defendant refused dialysis entirely stating he "gets sick and feels bad when running second shift" despite recommendations and warnings by staff); *id.* at 252 (1/22/25: Defendant refused dialysis treatment); *id.* at 100 (3/31/25: Defendant refused 44 minutes of dialysis treatment); *id.* at 92 (4/2/25: Defendant refused 45 minutes of dialysis treatment); *id.* at 87 (4/4/25: Defendant refused 58 minutes of dialysis treatment despite recommendations and warning by staff); *id.* at 70 (4/14/25: Defendant refused a procedure meant to ensure that defendant had a functional dialysis access port. Defendant refused, saying, "I'm not doing that."); *id.* at 48–49 (4/18/25: Defendant refused 2 hours and 38 minutes of dialysis treatment despite recommendations and warning by staff of fluid overload); *id.* at 41 (4/25/25: Defendant refused 1 hour and 43 minutes of dialysis treatment); *id.* at 37 (5/7/25: Defendant refused 46 minutes of dialysis treatment); and *id.* at 13 (7/9/25: Defendant refused 45 minutes of dialysis treatment). The Court acknowledge the medical records cannot tell the whole story and Mr. Castillo may decide to avoid lifesaving care because of his fear of another inmate. However, correctional facilities routinely address conflict between inmates, and such conflict does not serve as a basis for early release.

Next, Mr Castillo explains that he is awakened at 4:00 a.m. for administration of his medications, but he cannot take his medications at that time because they require food in his stomach. [158] at 6. None of Castillo's medication administration

7

records reflect provision of medications as early as 4:00 a.m. *See* [162-2] at 248–82. Instead, the records show Castillo receiving pills at various times, including 6:00 a.m., 9:00 a.m., 10:00 a.m., 2:00 p.m., 4:00 p.m. and 9:00 p.m. *Id.* Moreover, Castillo refused to take multiple different types of medications prescribed by his physicians, despite warnings that his refusal of treatment could result in worsening of his condition, disability, or death. *Id.* 147, 156.

Defendant states he is medically unable to climb the stairs to the second floor at MCFP Springfield due to his heart condition. [158] at 6. The Government responds that the staff at MCFP Springfield have determined Castillo does not require a medical pass to use the elevators and that his participation as a "pusher" of other inmates on the elevator demonstrates that Castillo is sufficiently healthy to walk up a single flight of stairs. [162] at 11. Although the Court recognizes an alternative conclusion may reasonably be drawn from this—that Castillo is unable to walk up the stairs due to his health and he will exert himself beyond his abilities and push another inmate just to use the elevator—the lack of an elevator pass does not provide a basis from early release from custody.

Based upon a review of Mr. Castillo's medical records submitted by the Government, the Court does not find that Defendant has a terminal illness or a serious illness that substantially diminishes his ability to provide self-care within the environment of the correctional facility. Rather, the Court finds that Defendant is receiving specialized medical care for his health conditions. Courts have denied compassionate release to defendants with equally difficult medical conditions.

8

*Dusenbery*, 2019 WL 6111418, at *3 (collecting cases); *see also United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (quotation omitted) (rejecting compassionate release reasoning "it is not enough that Defendant suffers from ... chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").

### ii. Age, Family Circumstances, and Other Reasons

Castillo does not argue that his sentence should be reduced due to his age, nor could he. For age to be an extraordinary and compelling reason, the defendant must be at least 65 years old. U.S.S.G. § 1B1.13(b)(2). Castillo is now 32 years old. Some family circumstances rise to the level of extraordinary and compelling reasons. U.S.S.G. § 1B1.13(b)(3). Although Castillo is the father of four children—three of whom live in Florida with their mother and one of whom Castillo has custody of several times a week while he is in Chicago ([158] at 3)—Castillo does not argue that his sentence should be reduced due to family circumstances. Likewise, Castillo does not contend that he is either a victim of abuse or received an unusually long sentence. U.S.S.G. § 1B1.13(b)(4), (6).

The Guidelines also provide that a sentence reduction may be appropriate when "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Here, Mr. Castillo states he has been in multiple confrontations with inmates that have resulted in being placed in

9

segregation, his property being stolen, and his funds being confiscated. [158] at 6. He also states that he is regularly denied blankets and is subject to retaliatory violations. *Id.* at 7. The Court finds that these facts, considered in combination with Castillo's medical conditions, do not constitute extraordinary and compelling reasons. Castillo fails to cite any precedent suggesting that an extraordinary and compelling reason to reduce a sentence exists here. Rather, the Court finds these "other reasons" are irrelevant. Accordingly, the Court finds that Castillo has not shown extraordinary and compelling reasons for a sentence reduction under "other reasons."

### c. Factors Set Forth in 18 U.S.C. § 3553(a)

Because Defendant Castillo does not assert extraordinary and compelling reasons for a sentence reduction, the Court does not reach the issue of the sentencing factors under 18 U.S.C. § 3553(a).

## IV. Motion for Inspection

Finally, Mr. Castillo was bitten by a spider, which has resulted in a hole on his stomach. [163]. He states that he has asked for help and for a physician to look at the wound, but has been repeatedly told he needed to "wait." *Id.* Defendant moved for a transfer him back to Chicago so that he may demonstrate the wound directly to the Court. [164]. Although the Court recognizes the potential severity of an infection, especially in light of Castillo's other ailments and expects MCFP Springfield to provide medical care to address the bite, this is not grounds for early release.

## V. Conclusion

After thoroughly considering all the facts presented, the Court does not believe

10

that Mr. Castillo presents an extraordinary and compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A). If Mr. Castillo's health deteriorates significantly, he may seek further relief. As the facts stand now, however, Mr. Castillo's request for compassionate release [158] is denied. Additionally, Mr. Castillo's motion for inspection [164] is denied.

E N T E R:

Dated: November 3, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge